MAXWELL, J.,
for the Court:
¶ 1. This is an appeal from an order entitled “Interim Judgment” that the chancellor entered in a guardianship-based fee dispute. While the chancellor decided the guardianship issue, there is no record that he resolved Appellees’ request to recoup attorneys’ fees spent defending an allegedly frivolous challenge by Appellant to recover legal fees already disbursed from the guardianship account. Because the “Interim Judgment” was interlocutory in nature and not a final, appealable judgment, we lack jurisdiction and must dismiss the appeal.
Facts and Procedural History
A. Initial Guardianship Proceeding and First Appeal
¶ 2. On April 17, 2009, James Nelson filed a petition for appointment of a conservator over his longtime friend, Frank Lewis. On May 1, 2009, a hearing was held, which led to an agreed judgment being entered establishing a guardianship over Lewis. The chancellor appointed Lewis’s attorney, Constance Slaughter Harvey, as guardian of his estate. And he appointed Lewis’s son, Franklin Lewis (Junior), as guardian of his person. The chancellor awarded attorneys’ fees both to Harvey and to Nelson’s attorney, Robert Logan.
¶ 3. On June 4, 2009, Lewis, with new counsel, appealed, arguing statutory re *204 quirements establishing the guardianship had not been met since two adult relatives within the third degree of kinship of Lewis were not joined and properly noticed. See Miss.Code Ann. § 93-18-281 (Rev.2013). This court agreed and, on October 5, 2010, issued an opinion reversing the chancellor’s establishment of a guardianship for Lewis. In re Guardianship of Estate of Lewis, 45 So.3d 313, 318 (¶¶ 14-15) (Miss.Ct.App.2010). In doing so, we stayed the effects of our reversal and remanded the case to the chancellor “so that the statutory defects can be cured and another hearing conducted to determine if Lewis is in need of a guardian.” Id. at (¶ 15).
¶ 4. However, unbeknownst to this court, Lewis died during the pendency of his appeal.[1]
B. Actions on Remand
¶ 5. Though Lewis had passed away, fee issues surrounding the guardianship lingered. And on April 8, 2011, Junior, as the executor of Lewis’s estate, filed a petition to recover funds he claimed were improperly disbursed and held in the guardianship account. He insisted all attorneys’ fees paid[2] from the guardianship must be returned since the guardianship was reversed on appeal.
¶ 6. On July 25, 2012, the chancellor held a hearing on Junior’s petition. Several attorneys appeared to oppose Junior’s request to return attorneys’ fees.[3] Recognizing the procedural quandary caused by Lewis’s death, the chancellor correctly found the guardianship issue was moot. But based on this court’s mandate and Junior’s petition to recoup attorneys’ fees already paid to Harvey, Logan, and one other attorney from the guardianship account, the chancellor conducted a hearing to determine if the May 2009 guardianship had indeed been necessary.
¶7. At the conclusion of the hearing, during which Harvey, Nelson, Junior, and Lewis’s brother, Tyler, all testified, the chancellor found the 2009 guardianship had been necessary for Lewis to carry out his affairs. And all parties agreed that, based on the chancellor’s finding, the request to recover attorneys’ fees disbursed by the guardianship account was moot.[4]
¶ 8. At this point, the attorneys who had defended the necessity of the court-imposed guardianship argued that Junior’s petition to recoup the guardianship-based legal fees was frivolous. So they sought to recover attorneys’ fees incurred defending the petition.
¶ 9. Before deciding this last fee-related issue concerning the alleged frivolity of Junior’s petition, the chancellor wanted “proof that [the defending attorneys] expended funds for the purpose of defending *205 th[e] petition” as “opposed to spending funds for the purpose of correcting the jurisdictional issues and making a new record” on the necessity of a guardianship. As the chancellor put it, the case was through “with the exception of a request for attorneys’ fees under the Litigation Accountability Act.” Thus, the chancellor still had to “determine whether ... this is a frivolous action.”
¶ 10. But rather than immediately decide the remaining legal-fees issue, the chancellor directed the parties to set the matter for a hearing on a future date. In response, Junior’s attorney asked the court to instead grant an interlocutory appeal of the guardianship issue. And the transcript shows the chancellor gave the attorneys a brief recess to confer about the prospects of Junior’s request for a piecemeal appeal. However, there is no indication in the record that the hearing ever resumed. Nor is there any record evidence that the chancellor decided the attorneys’ fees dispute or granted an interlocutory appeal of the guardianship finding. But there is a corresponding judgment in the record.
¶ 11. Less than a week after the hearing, on August 31, 2012, the chancery court entered an order labeled “Interim Judgment.” In this two-page judgment, which was signed by the chancellor, the words “THIS IS A FINAL JUDGMENT” were struck through with an ink pen. The judgment, which dismissed Junior’s petition, contained only findings about the necessity of the guardianship and Junior’s resulting concession that the challenge over fees spent from the guardianship account was moot.[5] But the chancellor apparently did not adjudicate the Appellees’ requests for fees incurred in defending Junior’s petition.
¶ 12. After review, we find the self-described “Interim Judgment” is not a final, appealable judgment. We therefore confine our discussion to jurisdiction.
Discussion
¶ 13. We employ a de novo standard in reviewing jurisdictional issues. R.A.S. v. S.S., 66 So.3d 1257, 1259 (¶ 10) (Miss.Ct.App.2011) (citing Calvert v. Griggs, 992 So.2d 627, 631 (¶9) (Miss.2008)). Although not raised by either party, we must examine the finality of a judgment on our own initiative. Id. (citing M.W.F. v. D.D.F., 926 So.2d 897, 899 (¶4) (Miss.2006)).
¶ 14. “As a general rule, only final judgments are appealable.” Maurer v. Boyd, 111 So.3d 690, 693 (¶ 11) (Miss.Ct.App.2013). See also Miss.Code Ann. § 9-3-9 (Rev.2002); Miss.Code Ann. § 11-51-3 (Rev.2012); M.R.A.P. 5. “A final, appeal-able judgment is one that ‘adjudicates the merits of the controversy [and] settles all issues as to all the parties’ and requires no further action by the trial court.” Maurer, 111 So.3d at 693 (¶ 11) (quoting Walters v. Walters, 956 So.2d 1050, 1053 (¶8) (Miss.Ct.App.2007)). “When all the issues in a case or claims against all the parties are not resolved in a judgment, no appeal of right can be taken.” Thompson v. True *206 Temper Sports, Inc., 74 So.3d 936, 938 (¶ 6) (Miss.Ct.App.2011) (quoting Williams v. Bud Wilson’s Mobile Home Serv., 887 So.2d 830, 832 (¶ 5) (Miss.Ct.App.2004)).
¶ 15. It really cannot be argued that an order labeled “Interim Judgment” is a final, appealable judgment — particularly when the language “THIS IS A FINAL JUDGMENT” has been scratched out and initialed by the judge, and the judge has apparently not ruled on a pending issue. While there are exceptions to the final-judgment rule — including obtaining permission to pursue an interlocutory appeal under Mississippi Rule of Appellate Procedure 5 or appealing from a Mississippi Rule of Civil Procedure 54(b)-certified final judgment — none are applicable here.[6]
¶ 16. Because there is no record evidence that the issue of attorneys’ fees incurred defending Junior’s allegedly frivolous petition was ever resolved, the “Interim Judgment” is not final and appealable. So we must dismiss for lack of jurisdiction.
¶ 17. THIS APPEAL IS DISMISSED FOR LACK OF JURISDICTION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, FAIR AND JAMES, JJ., CONCUR. CARLTON, J„ CONCURS IN RESULT ONLY.

. On October 21, 2010, we entered an order taking note of the suggestion of death filed by Harvey but did not modify the October 5, 2010 opinion.

. Junior alleged in his petition that the following attorneys' fees were improperly paid: $865 to Logan (Nelson’s attorney); $4,077.50 to Ottowa Carter (Harvey's attorney); and $10,189.30 to Harvey (Lewis’s attorney and guardian of Lewis’s estate).

. The petition was filed against Logan, Carter, and Harvey, all of whom appeared to defend the award of attorneys’ fees. Attorney Jason Mangum was also present and representing Logan. Orvis Shiyou appeared representing Junior.

.Once the chancellor determined the guardianship was valid, Junior's attorney maintained it was within the court’s "purview to award fees to [Harvey] for her services as the guardian[,] ... and the petition that we filed to recover funds I think would be moot because our petition was based on the fact that there was not a valid guardianship.... Thus it’s our position that the petition that we filed is now moot.”

. Parties may appeal from an interlocutory order under certain circumstances, but only after obtaining permission from the trial court and our supreme court. M.R.A.P. 5. And under Rule 54(b), a trial judge “may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties” in an action. M.R.C.P. 54(b). But the judge may do so "only upon an expressed determination that there is no just reason for delay and upon an expressed direction for the entry of the judgment.” Id. Here, the chancellor made no such express determinations. And absent a Rule 54(b) certification, any judgment — regardless of how designated — is not final if it "adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties.” Id. See also M.R.C.P. 54(b) cmt.

. Specifically, the chancellor determined Lewis "was in need of a guardian on May 7, 2009[,] and at all times thereafter.” The chancellor particularly emphasized that Lewis "was incompetent to manage his estate” and "was easily influenced and was, in fact, being influenced!,] which necessitated the appointment of a guardian.”
As to Harvey’s role, the chancellor found a "de facto guardianship existed at all times relevant from May 7, 2009[,] until [Lewis's] death on July 20, 2010.” And in her capacity as guardian, Harvey "did all things necessary and proper for the maintenance of [Lewis] and the preservation of his estate." The judgment also reflected that Junior’s attorney agreed his petition to return attorneys’ fees disbursed from the guardianship account was moot based on the finding that the 2009 guardianship was necessary.